UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| OSCAR HILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No.: 2:14-cv-01322-SGC |
| SOCIAL SECURITY ADMINISTRATION, ) | |
| Commissioner, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Oscar Hill, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Supplemental Security Income ("SSI"). Hill timely pursued and exhausted his administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C § 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

**I. Procedural History**

Hill has at least a high school education and has previously worked as a production assembler, laborer, and repairman. (Tr. at 29, 138-39, 159). In his application for SSI as amended, Hill alleged he became disabled on February 17, 2010, as a result of gout, sciatic nerve pain, arthritis, diabetes, foot and leg pain, high blood pressure, and tuberculosis. (*Id.* at 131-32, 137, 158). After his claim was denied, Hill requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 54-59, 66). Following a hearing, the ALJ denied Hill's claims. (*Id.* at 7-18). Hill was 55 years old when the ALJ issued his decision. (*Id.* at 18, 25, 27). After the Appeals Council declined to review the ALJ's decision (*id.* at 1-3), that decision became the

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 14).

1

final decision of the Commissioner, *see Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)).  Thereafter, Hill initiated this action.  (Doc. 1).

## II. <u>Statutory and Regulatory Framework</u>

To establish his eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 416(i)(1)(A); *see also id.* at § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  The Social Security Administration employs a five-step sequential analysis to determine an individual's eligibility for disability benefits.  20 C.F.R. § 416.920(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at § 416.920(a)(4)(i).  "Under the first step, the claimant has the burden to show that [he] is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 Fed. App'x 862, 863 (11th Cir. 2012).  If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled.  20 C.F.R. §§ 416.920(a)(4)(i) and (b).  At the first step, the ALJ determined Hill has not engaged in substantial gainful activity since his amended alleged onset date of February 17, 2010.  (Tr. at 12).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months.  20 C.F.R. § 416.920(a)(4)(ii).  An impairment "must result from

2

anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." Furthermore, it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id.* at § 416.908; *see also* 42 U.S.C. § 1382c(a)(3)(D). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 416.920(c).[2] "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 416.921(a). A claimant may be found disabled based on a combination of impairments, even though none of the individual impairments alone is disabling. 20 C.F.R. § 416.923. The claimant bears the burden of providing medical evidence demonstrating an impairment and its severity. *Id.* at §§ 416.912(a) and (c). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled. *Id.* at §§ 416.920(a)(4)(ii) and (c). At the second step, the ALJ determined Hill has the following severe impairments: obesity, gout, disorders of the back, and osteoarthritis. (Tr. at 12).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii);

---

[2] Basic work activities include:

> (1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 416.921(b).

*see also id.* at §§ 416.925 and 416.926.  The claimant bears the burden of proving his impairment meets or equals one of the Listings.  *Reynolds-Buckley*, 457 Fed. App'x at 863.  If the claimant's impairment meets or equals one of the Listings, the Commissioner will find the claimant is disabled.  20 C.F.R §§ 416.920(a)(4)(iii) and (d).  At the third step, the ALJ determined Hill does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings.  (Tr. at 13-14).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step.  20 C.F.R. § 416.920(e); *see also id.* at § 416.945.  A claimant's RFC is the most he can do despite his impairments.  *See id.* § 416.945(a)(1).  At the fourth step, the Commissioner will compare his assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  *Id.* at §§ 416.920(a)(4)(iv) and (e), 416.960(b).  "Past relevant work is work that [the claimant] [has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  *Id.* § 416.960(b)(1).  The claimant bears the burden of proving his impairment prevents him from performing his past relevant work.  *Reynolds-Buckley*, 457 Fed. App'x at 863.  If the claimant is capable of performing his past relevant work, the Commissioner will find the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(iv), 416.960(b)(3).  Before proceeding to the fourth step, the ALJ determined Hill has the RFC to perform light work as defined in 20 C.F.R. 416.967(b),[3] except he can never climb ladders, ropes, or scaffolds; can only occasionally climb ramps or stairs; can only occasionally stoop, kneel, crouch, crawl, or balance; and should avoid

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 416.967(b).

all exposure to the use of hazardous machinery, operational control of moving machinery, and unprotected heights. (Tr. at 14-16). At the fourth step, the ALJ determined Hill is capable of performing his past relevant work as a production assembler. (*Id.* at 16-17). Nonetheless,[4] the ALJ proceeded to the fifth step and additionally determined that in light of Hill's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Hill can perform, such as those of a laundry worker, table worker, and ticket taker. (*Id.* at 17-18). Based on his determinations at steps four and five of the sequential evaluation, the ALJ concluded Hill is not disabled. (*Id.* at 18).

## III. Standard of Review

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a

---

[4] Generally, if the claimant can perform his past relevant work, the Commissioner will determine the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv) and (f). If the claimant is unable to perform his past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(v) and (g)(1), 416.960(c)(1). If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled. *Id.* §§ 416.920(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will find the claimant is disabled. *Id.*

preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. Discussion

On appeal, Hill argues (1) the ALJ improperly discredited his testimony regarding the disabling effects of his back and leg pain and (2) the ALJ's determination of Hill's RFC is not supported by substantial evidence. (Doc. 11 at 3-11).[5]

### A. Credibility Determination

When a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms, the pain standard articulated by the Eleventh Circuit in *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991), applies. *See also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

> The pain standard requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

---

[5] In his conclusion, Hill states without elaboration or citation that the ALJ failed to fully and fairly develop the record. (Doc. 11 at 11). "[An] ALJ has a duty to develop the record fully and fairly." *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). Here, the ALJ did just that. In making his disability determination, the ALJ had the benefit of Hill's medical records; evaluations completed by an independent medical consultant, a state agency physician, and a state agency psychiatrist; and Hill's testimony. (Tr. at 23-51, 199-509).

*Dyer*, 395 F.3d at 1210 (quoting *Holt*, 921 F.2d at 1223).  Provided the *Holt* pain standard is met, an ALJ considers a claimant's testimony of pain or other subjective symptoms.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

An ALJ is permitted to discredit a claimant's subjective testimony of pain or other symptoms if he "clearly 'articulate[s] explicit and adequate reasons'" for doing so.  *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1561-62).  "A clearly articulated credibility finding with substantial supporting evidence will not be disturbed by a reviewing court."  *Foote*, 67 F.3d at 1562.  In determining credibility an ALJ may consider objective medical evidence and a claimant's reported daily activities, amongst other things.  20 C.F.R. § 416.929(c).

Here, the ALJ found Hill's medically determinable impairments could reasonably be expected to cause his alleged symptoms but that Hill's statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely credible.  (Tr. at 16).  He made this finding after considering Hill's medical records, the medical opinion evidence, and Hill's statements and testimony, and he articulated a number of reasons for affording Hill only partial credibility.  (*Id.* at 14-16).

First, the ALJ noted Hill's medical records do not support the degree of limitation Hill alleges.  (*Id.* at 16).  Specifically, the ALJ noted healthcare providers have consistently treated Hill's impairments conservatively with medication, by referring him to a pain clinic and physical therapy, and by encouraging him to exercise and alter his diet for purposes of weight loss.  (*Id.* at 14-15).  This is true.  (*See, e.g., id.* at 203, 205, 208-10, 230, 234-39, 244, 246-49, 263-66, 268-306, 327, 336-48, 353-74, 385, 452-65, 467-69, 471, 473, 475-78, 485-92, 495-98, 502-03).  In April of 2009, imaging of Hill's lumbosacral spine revealed a mild degenerative change of the lumbar spine.  (*Id.* at 314).  Shortly thereafter, Hill successfully completed approximately one

month of physical therapy for lower back pain.  (*Id.* at 404-10).  His discharge note indicates he reported feeling much better.  (*Id.* at 404).  A treatment record signed just a few days before Hill's discharge from physical therapy notes a normal back exam and, specifically, a normal range of motion, no CVA tenderness, no lower back pain, no muscle spasms, and no vertebral tenderness.  (*Id.* at 323).  By February of 2010, imaging of Hill's lumbar spine revealed a broad-based disc bulge, disc herniation, and mild epidural lipomatosis.  (*Id.* at 350).  However, the ALJ found that treatment notes associated with this diagnosis indicated no resulting functional limitations.  (*Id.* at 15).  Contrary to Hill's claim (Doc. 11 at 5), substantial evidence supports this finding.  Records of examinations performed after the February 2010 imaging of Hill's lumbar spine lack documentation of functional limitations associated with his back problems. (Tr. at 376-80, 382-92, 467-507).  Additionally, Hill reported no musculoskeletal symptoms in November of 2010.  (*Id.* at 377).  Although he did report "pain all over" in August of 2012, a contemporaneous physical exam revealed normal spine curvature, symmetry, mobility, and tenderness; that his extremities showed no atrophy, tremor, cyanosis, clubbing, edema, redness, tenderness, limitation of joint motion, or deformities; and that his gait was normal.  (*Id.* at 468). It was also noted during that exam that while Hill reported his back pain limits his functioning, he also reported opiates helped.  (*Id.* at 469).  Finally, imaging of Hill's knees performed in August of 2011 showed the joint spaces were well-maintained medially and laterally on both sides and that both knees were symmetrical and unremarkable.  (*Id.* at 481).

      Second, the ALJ noted medical opinions provided by David Aarons, M.D., an independent medical consultant who evaluated Hill in person in January of 2011, and Robert Heilpern, M.D., a state agency employee who assessed Hill's medical records in March of 2011, do not support the degree of limitation Hill alleges.  (*Id.* at 16).  Dr. Aarons diagnosed Hill with

8

mild right sciatica, left knee pain probably caused by degenerative joint disease of the left knee and post-traumatic osteoarthritis, and intermittent gout.  (*Id.* at 424).  Dr. Heilpern diagnosed Hill with obesity, lumbar radiculopathy, gout, arthritis, diabetes mellitus, and hypertension.  (*Id.* at 430).  As a result of these impairments, Dr. Heilpern opined Hill is limited to light work with some postural limitations and should avoid all exposure to hazards.  (*Id.* at 431-34).  The ALJ gave significant weight to these medical opinions because Hill's medical records do not indicate Hill is more limited than Dr. Aarons or Dr. Heilpern opined.  (*Id.* at 15).  Furthermore, the ALJ noted that although Dr. Heilpern only examined Hill's medical records, Dr. Aarons evaluated Hill in person, and neither opinion contradicts the other.  (*Id.*).  Finally, the ALJ noted Hill's activities of daily living support the opinions of Dr. Aarons and Dr. Heilpern.  (*Id.*).

Hill challenges the weight given to the opinions of Dr. Aarons and Dr. Heilpern on a variety of grounds.  (Doc. 11 at 7-8).  He notes Dr. Heilpern did not examine Hill.  (Id. at 7).  However, state agency medical consultants are highly qualified physicians who are also experts in Social Security disability evaluation.  20 C.F.R. § 416.927(e)(2)(i).  Their opinions may be entitled to considerable weight if sufficiently supported by the record.  SSR 96-6p.  Hill claims Dr. Heilpern did not have the benefit of objective medical evidence—specifically, the February 2010 imaging of his lumbar spine—when forming his opinions.  (Doc. 11 at 7).  This is speculation undercut by Dr. Heilpern's citation to Hill's medical records.  (Tr. at 431).  Although Dr. Heilpern did not explicitly cite to the February 2010 imaging of Hill's lumbar spine, he did cite an October 2010 medical record noting lumbar radiculopathy.  (*Id.*).  Hill also speculates Dr. Heilpern relied on only three medical records and Dr. Aarons's evaluation in forming his opinions.  (Doc. 11 at 7).  Even if true, Hill fails to articulate how that undermines the weight afforded those opinions, which the ALJ found to be consistent with Hill's medical records.

9

Confusingly, at the same time, Hill claims Dr. Heilpern's opinions contradict Dr. Aarons's findings of positive straight leg raising and decreased sensation. (Doc. 11 at 7-8). Dr. Heilpern noted both of these findings. (Tr. at 431, 534). Hill fails to articulate how these findings are inconsistent with Dr. Heilpern's opinion he could perform light work with some restrictions. Finally, Hill claims medical records post-dating Dr. Aarons's evaluation and Dr. Heilpern's assessment, which were completed in early 2011, reveal Hill is more limited that Dr. Aarons or Dr. Heilpern opined. (Doc. 11 at 8). Hill does not indicate which medical records he believes demonstrate his limitations beyond those found by Dr. Aarons or Dr. Heilpern or what those limitations are. The weight given the opinions of Dr. Aarons and Dr. Heilpern is supported by substantial evidence, including but not limited to the absence of functional limitations documented in Hill's medical records.

     Third, the ALJ noted Hill's testimony that he is capable of doing a range of activities of daily living and performing various chores at a varied pace does not support the degree of limitation he alleges. (*Id.* at 16). Specifically, Hill testified he cooks, cleans, does laundry, watches television, and plays chess. (*Id.* at 38-39). He further testified he cares for his mother, who suffers residual complications from a stroke, and his grandmother, who has dementia. (*Id.* at 37-39, 43-44). Hill argues the ALJ mischaracterized the extent of his participation in these activities. (Doc. 11 at 8-9). For example, he notes he testified his aunt handles most of the repairs at the home where he lives with his mother and grandmother and comes over all of the time to take care of his mother. (*Id.* at 8; *see also id.* at 36-37). While this may be true, Hill also testified he provides care for his mother and grandmother within his limitations (*id.* at 36-39, 43-44), which is consistent with the ALJ's characterization of his daily living activities. He further argues his ability to participate in daily living activities does not preclude a finding of disability.

(*Id.* at 9-10). An ALJ may not rely on a claimant's daily activities alone in making a disability determination. *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). However, an ALJ may consider these activities when making a credibility determination as to a claimant's testimony of pain and its limiting effects. 20 C.F.R. 416.929(c); *Strickland v. Comm'r of Soc. Sec.*, 516 Fed. App'x 829, 832 (11th Cir. 2013) (ALJ's credibility finding as to claimant's subjective complaints of symptoms and their limitations was supported by evidence of claimant's daily living activities). Here, the ALJ properly considered Hill's daily living activities as one of several factors cutting against Hill's testimony as to his pain and its limiting effects.

In sum, the ALJ clearly articulated his reasons for discrediting Hill's testimony of his symptoms and their limiting effects and that credibility determination is supported by substantial evidence.

### B. RFC, Generally

Hill generally argues the ALJ's determination he has the RFC to perform light work with certain limitations is not consistent with his medical records, but rather the ALJ picked and chose records to support his determination. (Doc. 11 at 10). The only specific piece of evidence Hill cites is the February 2010 imaging of his lumbar spine. (*Id.*). He claims the ALJ ignored the findings documented by this imaging. (*Id.*). In fact, the ALJ discussed this evidence explicitly. (Tr. at 15). An ALJ is not required to refer to every piece of evidence in his decision. *Dyer*, 395 F.3d at 1211. Here, the ALJ's determination of Hill's RFC is supported by the medical records, medical opinions, and daily living activities discussed above. *See* 20 C.F.R. § 416.945(a)(3) (RFC is assessed based on all relevant medical and other evidence). Accordingly, contrary to Hill's claim (Doc. 11 at 10-11), Grid Rule 201.12 is not implicated here.[6]

---

[6] The "Grids," also known as the Medical-Vocational Guidelines, are found at 20 C.F.R. Part 404, Subpart P, App. 2. An ALJ may use them to determine at the fifth step whether other work exists in substantial numbers in the

V.  **Conclusion**

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned find the Commissioner's decision is supported by substantial evidence and in accordance with applicable law. Therefore, that decision is due to be **AFFIRMED**. A separate order will be entered.

**DONE** this 18th day of September, 2015.

/s/ Staci G. Cornelius
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE

---

national economy that a claimant is capable of performing. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).

> The [G]rids provide for adjudicators to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."

*Id.* at 1240; *see also Gibson v. Heckler*, 762 F.2d 1516, 1520 (11th Cir. 1985). Grid Rule 201.12 provides that an individual between the ages of 50 and 54 with a high school education and a history of unskilled work who is limited to sedentary work is disabled. 20 C.F.R. Part 404, Subpart P, App. 2, § 201.12.